SOUTHERN CALIFORNIA AGAINST DEPUY SPINE SOUTHERN CALIFORNIA AGAINST DEPUY SPINE Mr. Berliner, when you're ready. May it please the Court, my name is Robert Berliner, and I'm representing the University of Southern California, USC, and Ampac Biotechnology Corp. I'd like to begin this by referring in the blue book, page 14, where you can see a cross-section of two intervertebral disks. The disk on the left-hand side is referred to as a Grade I disk. It's a juvenile disk, which had no degradation at all. And you can see that the disk is composed of a nucleus papulsis, which is in the center, surrounded by annulus fibrosus, and then on top and bottom by end plates. We are quite familiar with the underlying facts, so I think rather than using your time to lay out the framework of the technology here, it probably makes sense to go directly to your critical legal issues you want to call to our attention. Yes, and the legal issues involved here are several. One of the issues is whether or not – by the way, I would like to reserve five minutes if I may. That's very good. One of the issues is whether or not we, the board, should have allowed a modification to the count to eliminate the reference to the nucleus papulsis. This would have allowed us to rely upon our provisional patent application and given us retained senior party status. You're arguing that they should have allowed Claim 7 to be substituted as a count, right? That's correct. But if I understand Claim 7, it has a limitation in there which is not present in the Dupuis claims, and that is this heat limitation. Am I correct about that? Which limitation? Heat. The heat is the natural heat of the body. It's not added heat. It's a limitation which has no significance because it's just a natural environment of the cell. And initially – But it is a limitation that's not present in the Dupuis claims. Right, and the reason we wanted to have an allowed claim is because the examiner felt that the claim that we did propose, which simply eliminated the nucleus papulsis and substituted, injecting it to the collagenous material, that was not a claim by itself that was allowed. In other words, the words themselves were not found in any claim. And he proposed that this was unpatentable over a reference called axan. We argue in the brief why that was not an appropriate reference, but we chose to use an allowed claim because of that. So the heat limitation separated this from the prior art of axan. That's correct. So you decided not to fight him on whether or not it's necessary, but rather to choose something that would have been allowable. That's correct. And you could have a phantom claim. So is it your view then that the Dupuis claims may not have had the heat limitation claim, but they would have been obvious nonetheless? I don't mean obvious in the invalid sense. I mean in the interference-choosing-account sense, which, by the way, if I say something wrong, correct me, because I found this to be very dense, very difficult to wrap my head around all this interference. Life is too short. So is it true that in selecting a count, it may well be that there are elements of the count that aren't present in one or the other of the references, but that what is present in those references must be obvious in light of the count or vice versa? Somehow there's an obviousness part to this, right? That's correct. Yes, thank you. That is correct. And the other issue, of course, is that we predated the constructive practice date of Dupuis. You're provisional is what you mean. I am provisional. Let me ask another question. Does it often happen that an interference results in no one getting a patent? Because that's what happens here, right? Nobody at the end, Dupuis was determined to have priority because you all couldn't use provisional, but then their claims were found to be invalid. Right. Their claims were found to be obvious over a presentation by the inventor. If the board had found all the claims unobvious at that time, then there would have been no interference. We would have retained our claims and they would have dismissed the interference because all the claims would have been obvious. What happened was that we argued that all the claims were anticipated and the board said, you didn't say that all the claims were obvious if not anticipated. Well, without going into that sort of mysterious realm, subsequently they did find that all the other claims of Dupuis were invalid at a later time. So the result was that we wound up having this contest of priority where it should not have been a contest at all. Come back to line seven. What was the error of the board in not allowing claim seven to be substituted? I mean, just, you know, what is there in the MPEP or in the cases that say that? No, I can quote the reason that they gave. And the first reason they gave was that... No, I know what they said, but what's your view as to why it would have been error not to allow the substitution? I don't think there is any excuse for it. They should have allowed the substitution. What is it that is the reason that it's an error? The reason it's an error is that we have a right, U.S.C. had a right to have a claim that would have allowed it to use its earlier patent, has the right to have a claim which would report with its earlier patent. Where does that come from? It comes from case law. What case law? Well, I don't have any citations here, Your Honor, but it's well known that when you have an interference... But the problem I'm having is you make this argument about the error in not substituting Claim 7 in your brief, but I don't see any authority that supports the view that they were obligated to do that. That's the problem I'm having. And if you choose not to cite the authority, I don't know what to do about it. Is this the Condo v. Martel decision from the board, which I think was cited at some point by one of the parties? That seemed to be the closest authority to the proposition that you're now propounding, right? The proposition that that case recites is, it is accepted in interference practices to substitute a broader count when a party's best proofs lie outside the scope of the present count. Isn't that your basic claim? And that's the case that was cited by counsel for the... That's fine. And yes, you have a right to have a phantom count. And it's more proper to have a count that would allow each person to provide its truth, particularly in this case where the board and also the query's own expert agreed that there is no real distinction between the nucleus repulses and the annulus fibrosis when you're treating the disc, especially degenerated discs, because you just have to inject into the disc. And we have some reference to what's called discography, where it says that the way you treat a disc is to inject into the center of the disc. So if you're going to inject the disc, you're going to inject it into the center. And so we should have had a claim that was broad enough to encompass both of our cases. But you left out the living being limitation also in Clause 7, if I recall correctly. Yes, and I'll... What's the justification for leaving that out? Well, there is no justification with that, but of course we never believed that a living being was a meaningful limitation. So if we conclude that it was a meaningful limitation, then your Claim 7 shouldn't have been substituted because it left out this important limitation. No, the point, however, is that if you leave it in, we would have relied upon our constructive reduction of practice via... No, I don't think you're addressing my question. You asked to have Claim 7 substituted. I've been asking you about whether you had a right to have Claim 7 substituted. You've argued that eliminating the nucleus limitation was appropriate and that that shouldn't have prevented it from being substituted. I'm now asking you about the elimination of the living being limitation, which let's assume that it is a meaningful limitation. Doesn't that mean that Claim 7 shouldn't have been substituted because it eliminated that? Yes, I see you're on memory. If I could have a few minutes, I would take... Yes, go ahead. Yes, indeed. But here's the logic of it. If we had Claim 7 as the claim, it actually has reference to a living being in the body of the claim other than the preamble. And so our preamble discussion goes out the window. However, we would then have been senior party. We would have had to have an actual reduction of practice because it would have been predating the filing date of the 211 patent. Are you saying when Claim 7 says contacting tissue within a human body, it does clearly have a living being? It could be a dead person, I assume. Claim 7 does. You're saying that Claim 7 didn't overlook the living being requirement. If Claim 7 had been the count, we would not have had a reduction of practice that met the count. But we would have had an actual reduction of practice. We would have had a constructive reduction of practice. In the provision. In the provision. Right. And we would have won the case. So if Claim 7 were... So we wouldn't have been concerned with reduction of practice. We knew that the plea did not have an actual reduction of practice. We knew that... And the other issue... I'll just take just a moment to drill that. We briefed it in the brief. I don't understand how you can say that they should have found that these other claims didn't correspond to the count when you never knew, except with respect to four of them, that they not be treated as corresponding to the count. Well, there's nothing that requires a judgment that all the claims be invalid if the other party wins priority. No, but there is a requirement that you move. I could not move that because the claims not recalling for nucleus repulsus were broader than the degree claims. And you can't... And since they're broader, there's no basis for removing them at that stage. So you're not arguing now that they didn't correspond to the count? No, they did correspond to the count, but they're broader than the count. So what was the reason for preserving them after the interference? I don't understand the argument. Well, the reason is that those claims, because they don't refer to nucleus repulsus, are supported by the provisional application. So, in fact, we had... I don't understand the relevance of that. They correspond to the count. If the priority determination is sustained, you don't get priority as to those claims because they correspond to the count. What am I missing? Well, what you're missing is a case where we decide in the brief that says that the board is not obligated to do that. But what you're also missing is for that case, which is quite on point, in which there was an interference, and we were not permitted to have a count, to have a reliance on... But that was a case in which the examiner said, this is a separate invention, this is different, this isn't obvious. And a way of award determination was held that could unfairly change the ground rules at that later time. Whereas here, there was no finding of non-correspondence to the count of these claims during the interference. In fact, they were found to... They were assumed to correspond to the count, and except with respect to four of them, we never argued that they didn't correspond to the count. So it seems to me it's quite different from... Well, we go back to the prosecution because it was simply rejected, finally rejected, and then we can argue that because these claims are supported by the provisional application, they predate any priority that we obtain. Therefore, the claim should be allowed, those particular claims, not the claims that co-operate with these proposals. Those claims are actually supported by a date that goes back and behind the date when... You lost that in the interference proceeding. You lost the priority. We lost the priority date in the interference proceeding. However, because we're not allowed to use the provisional application, but the provisional application does give a priority date to the claims. That's what I'm talking about, priority. I'm way over. I'm sorry. Go ahead. We'll preserve some for another time for you. Go ahead. So the point there is that here you have claims that don't fall for new fiscal policies. They're completely supported by the provisional application, which has a date way before the constructive reduction of practice of the 211 patent. Way before. And so we say that we should get these claims. Those claims should not have had a final judgment against them. We had no choice of having them in there because we could not file a motion to eliminate them because they were broader than the claims were broader than the count. There's no basis on which you could have filed a motion to say these do not correspond to the count, but they do correspond to the count. They're broader than the count, so they must correspond to the count. We can't lose the priority dispute and then say we should have priority because of the provisional application. That was what the interference was about. You lost. The claims correspond to the count. It's over. What am I missing? Well, because the claims should not... First of all, you get back to the relevant question as to whether or not we should have been permitted to have the provisional patent application to rely upon, all of which turns on the question of whether claim seven should have been the count. That's correct. I mean, doesn't the rest of it all flow from that question, really? It does, but on the other hand, as a completely separate matter, you have a situation where we actually have an earlier filing date than the reduction of practice of the other party, regardless of who was found to have priority. The provisional application was not in that equation. Now, when you're making a judgment to say these claims are rejected, you have to say, well, how can I reject these claims if, in fact, they're supported by a date which is well before the constructive reduction of practice? All right. We will restore three minutes of your time. Let's add, if we could, Ms. Thompson, three minutes to Mr. Brettschneider's time if he needs it. Mr. Brettschneider. Good morning, Your Honor. May it please the Court, I am Barry Brettschneider, Baker & Hosteper, LLP for Appleby DePue Spine. DePue? I saw a whole range of pronunciations, one of which was DePue. There's no accounting for people. It will be DePue from now on. Right. Not a problem. They're apparently used to that. I would imagine. Before launching into the main part of the argument, I'd like to, before we forget, answer one of the questions to Mr. Berliner, which was, is there a case in which both parties lost and why? I can think of one example right off the top of my head, which is Perkins v. Kwan. In that case, I don't remember the site. It was back in the 80s, I believe. K-W-O-N. In that case, the senior party turned out not to be the first to invent, but the junior party was barred by a prior publication that was not prior art to the senior party because of the differences in filing dates. The senior party took the position that since the junior party's claims were unpatentable over the prior art, there was no interference and the board should have entered judgment at that point, stopping the interference and just saying that the junior party did not have a right to its claims. The board didn't do that. The board entered judgment against the junior party on prior art and against the senior party on priority. When the case came up to the federal circuit, the court affirmed, saying that the board had the discretion and authority to decide priority because Section 135 of the- I don't think you want to waste your whole time on this point. Okay. I just wanted to get that out there because there was a question. What about Claim 7? What was the argument that Claim 7 should have been substituted in the count? We have to consider the procedural environment in which this came up, which is not apparent from Mr. Berlin's argument. In an interference, what you do first is you file a paper that says to the judge in charge, I want to file these motions. Will you authorize them? The Motion 1 that was listed by USC, and you can see this in Appendix 121, was for a motion to redefine the count to remove the limitation of injecting into the nucleus pulposus. There was no mention of the interliving being limitation at that time. The board granted authorization for this motion at Appendix 125, giving the same rationale, causing the count to eliminate the requirement of injecting the nucleus pulposus. This limitation, by the way- I don't understand where you're going. Help me understand. Your Honor, what happened was, in an interference, when you want to change- Didn't they move to substitute Claim 7 as a count, right? No, they did not. They did not? They did not. They requested an opportunity to move. Well, that's the problem, Your Honor. And it was denied. Well, they did, but later on in the proceeding, the way interferences work is you're supposed to request your relief in the original motion period. The relief that USC requested was to change injecting nucleus pulposus to contacting the nucleus pulposus. Did the board say that they were rejecting Claim 7 as a substitute count because it wasn't a timely motion? In essence, yes. Where did they say that? Well, what happened was- No, that's not what happened. Where did they say that? Okay, where they said it, if you find Appendix 744 and 745 and Appendix 66 and 67. 66 and 67 is directed to denials related to some sort of inexorable conduct judgment, right? I think 66 and 67, Your Honor. 65 seems to be the one. 64 and 65 is the one. I'm sorry, Your Honor. The whole paper is 64 through 67. That's correct. 64 and 65 seem to be where they've denied the ability to move for Count 3 to be Claim 7. And the only explanation they gave, which I have to say I don't understand, is since in this case the concern is strictly hypothetical, there is insufficient reason at present to change the count further, what did they mean? What was hypothetical? What the board meant, I think- Yeah. You don't know either, do you? I couldn't figure it out. I did not quite understand it myself, but I think part of the problem was that the issue had not been properly teed up by USC. What they should have done- But they don't say that. They don't say that you didn't properly raise the issue. You're arguing that that was the basis for the rejection, but you're not able to point to any language where they said that. Well, Your Honor, you have to understand the context. Are you able to point to any language where they said that we're rejecting this because it wasn't raised in a timely manner? Because of the timing of the actual request, the answer to that is in the places that I pointed out, Your Honor, the answer is yes. Well, they raised it in the paper. I don't know what number the paper is, but at 744 through 745, which is the paper that led to, as I understand it, the rejection at 64 and 65. That's right, Your Honor. They raised it there. That's in response to a request for comments on the count, as I understand it, right? Right. Now, why is that not a timely and sufficient raising of the objection to the count and an argument in favor of a different count? The reason it's not timely, Your Honor, is that under the Board's rules, the way these issues are raised is in the substantive motion period. It's well stated that there are two portions of an interference. There's the substantive motion phase and there's the priority phase. Under the Board's rules, the idea is you tell the Board right at the beginning what you want the Board to do. USC did that. In this case, USC did not ask for the deletion of the in a living being limit. I don't understand, though. How can it be too late? Even if there was some 30-day period enunciated clearly in the regs, the Board expressly asked for comments on the count. So they're asking, what do you all think about the count? And their response was, we don't think this is a good count. We think the count needs to be broadened. We think it should be Claim 7, and here are the reasons why. How does that possibly be untimely when the Board actually is asking them for that information? Well, it is untimely because the whole – here's the issue with it. If parties were allowed to do this, you would go all the way through the motion period. If the parties were allowed to do this, the Board asked them to do it. Didn't the Board expressly ask for comments on the count, and isn't that what 744 is responsive to? It asked for comments on the count. But you're not allowed to make any negative comments? Well, they did, but here's the problem. If you'll notice the comments that were made, the comments that were made do not refer to a living being limitation. What are you saying, that by asking for comments, they wanted changes in the count, but that wouldn't include a substitution of Claim 7 as a count? I think that's correct, Your Honor. But here's the problem. The problem is, how do we know this? I mean, you know, the Board didn't say it, and, you know, I'm not sure where in the regulations it's clear that they couldn't ask for a substitute count later on. Where do I find that? It's clear from the Board's rules having to do with motions and notices of release. What rule? What does it say? The rule says, and I do not remember the rule off the top of my head, but the rule says that the Board has a right to require the parties to list the reliefs that they wish. And in this case, the motions list is a list of the reliefs that USC requested. They requested a count which did not change with respect to the end-of-living being limitation. The Board looked at what they asked for and said, we're not going to give you this count for two reasons. And one of the reasons was, well, one of the reasons was that they had essentially sandbagged the pew by bringing up issues in the reply that were not brought up in the original motion. But more importantly, and this is not answered by USC anywhere, the Board held that the proposed count to replace the original count was unpatentable under the Act Sandra. Well, that's not a count. Yeah, that's not a count. That's not a claim. No. That was the earlier count. I understand that. All right. But what happened here, though, we get into this posture. The Board has done its work. What the Board wants, and what they said at the hearings, read in the comments, what they want is they want the parties to put their cards on the table and say, this is what we want. USC said this is what we want, and the Board said, okay, we'll let you try to get that. That was USC motion one. The Board denied USC motion one. There is nothing in this appeal that shows that the Board's decision to deny motion one was incorrect. If you also look on timeliness grounds. Sorry, your Honor? On timeliness grounds. Not completely on timeliness grounds. Not at all. I don't see the Board referring to timeliness in its denial. I mean, I do have trouble understanding this paragraph on A65, but I don't think there's anything there that says timeliness is the ground for their decision. I think, though, that the whole point is that it is timeliness grounds because the way the Board's rules are set up, you ask for your relief in the notice of relief under the rules. That's the motions list. The Board said, fine, you can go after that. Here's something else that I noticed, your Honor, and that is that in the papers that resulted in appendix 64 through 67, and also 744 and 745, although the in-the-living-being limitation was removed from claim seven, it is not in claim seven. What about that language about tissue of a human being? I'm sorry, your Honor? I'm sorry. In claim seven, yeah, tissue of a human body. I mean, it has that in the body, not in the preamble, but in the body of the claim. So doesn't it still effectively contain the living being requirement? I would argue that, your Honor. And I would also point out that the... You would argue that it does include it? It does include the in-the-living-being. So there's no elimination of that. There's no real difference here. So what was the... Forget the timeliness issue. Why were they not entitled to have claim seven substituted as the cap? You say it includes the living being limitation, so the difference between that and the other one is the nucleus, and there's the question of the heat limitation. So what is wrong with their effort to have claim seven substituted as the cap? Well, they should have asked for that. No, forget that. In a way, the other reason is, remember, they made no showing that would comply with the Board's rules as to substitution of the count. They made no showing as to why count seven, for example, would be patentable. They did not... You can say you could send this case back to the Board and say, well, you should have allowed them to file a motion as to claim seven as a new count. But where has the Board, given the structure of interference practice, where has the Board abused its discretion and made a legal error here? That's the real question for the Court to decide. Has the Board made a ruling that is not rational based upon... Well, what standard, what Board standard for substituting counts was violated by the effort to substitute claim seven? What was wrong with the effort to have claim seven introduced? Since there was actually no motion. Forget the timeliness. No, no, no. We're putting that aside. This doesn't deal with timeliness. It deals with the nature of the showing that USC made. USC did not make a Crawford, for example, that claims seven was patentable over the Crawford. But the Board didn't reject it on that basis. So why isn't abusive discretion, at a minimum, failure to articulate a reviewable basis for rejecting the motion? Because I can't make heads or tails of that one paragraph on page 65. I don't really have a sense of why the Board rejected their motion. And since I don't have a sense of it, and since I don't have a sort of understanding that there is something wrong, effectively, with them having filed this motion, especially in response to the request for comments, when they file their comment, I mean, why isn't the abuse of discretion? We do this all the time. We get a district court opinion or an opinion from an agency which we can't decipher the logic in, and that effectively is an abuse of discretion because it becomes effectively unreviewable. So why isn't that an abuse of discretion? I mean, I'm not saying that they were wrong not to take – I'm not saying that they're wrong to not take claim seven, but they're wrong not to explain to us why they're not taking claim seven. I think part of the reason for the Board's decision and the hypothetical nature of this, they're looking at it and they're saying, Well, what difference does this make to the ultimate decision of the case? This is the hypothetical element of it. If we substitute claim seven, what difference does it make? We can't see that it makes any difference. Well, but the difference it makes is claim seven minus the heat limitation was rejected in light of AXAN, but when you add the heat limitation, probably not rejected in light of AXAN. Maybe it is, but that's something the Board will have to decide on its own. And claim seven gives them the ability to claim priority. So if it isn't rejected in light of AXAN, you at least end up in a situation where somebody owns the patent rights at the end of the day. Maybe not your client, so it wouldn't make you happy, but why isn't all of that the basis for why this would be a good idea to do? Well, there are several reasons. For one thing, procedurally, I know, Your Honor, I hate to traverse you on the issue, but leave that aside for a moment. So we'll accept that as ground one. We have kind of an endless regress, Your Honor, and that is that if the motion to substitute claim seven as a count were granted, then Dubuque's fine would have had the opportunity to file a motion to deny benefit of the provisional application as to claim seven and on and on and on. Why don't you still get to do all that? Well, the problem here is that under the Board's procedure, which it sets forth in regulations, which have the force and effect of law, the interference is supposed to be decided in a just and expeditious manner, and part of the expeditious... How often does that happen in your experience, Mr. Bretschneider? You don't have to answer that. Don't get yourself in trouble. Let me see if I can help understand this. If I understand what you're saying is that count two was rejected over axiom, and you're saying that claim seven wasn't materially different from count two, and therefore it was also obvious over axiom, and therefore there was no basis to substitute it. Is that what you're saying? I don't believe that issue, Your Honor. It was teed up. I cannot answer that. I cannot answer that question, because the issue is not on the record. What issue is not on the record? Whether claim seven is patentable over axiom or not. I think the argument can be made that it is not, but that issue is not. Because of the heat limitation or for some other reason? Well, for any number of reasons. The axiom discloses generally what's going on here, but for some, like the native protein limitation, I believe is one of the distinctions. That didn't work with their proposal. Okay. Is there an argument that claim seven wasn't appropriately substituted as a count because it had a heat limitation that wasn't present in the Dupuis claims? In part, that's – remember, at this point, the only claim, because of the Board's decision of patentability, the only claims that would be permitted would have been USC claims. No, but to answer my question, there is a heat limitation there. Is the argument that that heat limitation wasn't present in the Dupuis claims and therefore claim seven wasn't appropriate? There is that argument. Well, there is. Or was it made? I'm sorry? Was that argument made? No, there was no – No, when you say there is that argument, you mean you just heard Judge Strack make that point. Exactly. Well, that's not normally the basis for deciding cases, but all right. But anyway, that was never raised before the Board or us. I see that my time has expired. I did want to make one comment about the issue of claim correspondence. Very briefly, if you would. The Board has it right. There's no basis to go behind Rule 207B here. The case law, like Follett, Yale, and Tao, which are cited in the Appellate Supreme, were intended to be overruled by the current – I don't understand. I don't understand why you make that argument. It seems to me that Follett is completely different in the sense that they had a ruling from the examiner that these claims didn't correspond to the count. They were a separate invention, and because of that, the Court said, you know, the claims are not subject to the prior determination that was made there. That's not true here. They admit they correspond to the count. But the whole idea, Your Honor, with Follett, Yale, and Tao, was going back in subsequent ex parte prosecution and relitigating the issue of claim correspondence is now not necessary under current interference practice. Very well. Thank you, Your Honor. Thank you. From here, three minutes rebuttal from Mr. Berliner. Thank you. I do appreciate that you do comprehend very well the details of this interference. Accident had nothing to do with intravertebral discs. That's why we never thought it was a decent reference, nor did Dupree, because if you look at the specification, they also had nothing to do with intravertebral discs. Now, with respect to how we distinguished over accident, if you look at the claims— Claim 7 over accident. Claim 7, there are two distinctions. One is the fact that we have pyridinylene crosslinks. You did not have that in the material that accident was using. Those are disc limitations. The other one is that, when you talk about the heat, it says having at least one crosslinking agent under conditions within physiologic limits to prevent overheating. You're talking about the human being. You don't heat it past physiological limits. It doesn't work. It never happens. So it's a meaningless limitation. As far as 407B, all claims fall together, if you look at that provision, you'll find that it says, not just that they're all together, but it also says no presumption based on claim correspondence regarding the grouping of claims exists for other grounds of unpassability. Well, who cares whether it's presumption or not? You've admitted that it corresponds with accounts. Right, but the statute also says that that claim correspondence issue does not exist with respect to other grounds of compatibility. For example, obviousness. Well, my point there is that when you're dealing with claims that don't contain the nucleus propulsive, they actually have support from the provision application. Therefore, they're not obvious over the priority finding. I understand that that's an issue that may even be unique. It wasn't unique with respect to Furet. If you read Furet again, you'll see that the circumstances are quite similar. Even though there was interference, they refused to have that claim in the interference. Based on that, the court said they should have had their day in court, so to speak, with respect to that claim. We believe we should have had a day in court with respect to Claim 7. Insofar as the living being component of Claim 7, yes, that's in the body of the claim. So that defeats the argument we have with respect to claim limitations. But I think it's a good argument, by the way, and I think our brief is strong in that regard. But we don't care because if you have Claim 7, we don't need that argument. We are now senior party. They can't get behind our provisional patent application date. And so I would address the case plan piece of it. Very well. Thank you. Thank you for having me. Thank both counsel and the cases submitted.